# Illinois Official Reports

## Appellate Court

---

*People v. Smith*, **2018 IL App (1st) 151312-B**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVIE SMITH, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-1312 |
| Filed<br>Rehearing denied | June 14, 2018<br>July 13, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-4124; the Hon. Michele M. Pitman, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Christopher Cronson and Brett Cronson, of Cronson & Cronson, Ltd., of Waukegan, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Neville and Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1  The Illinois Supreme Court entered a supervisory order denying defendant Stevie Smith's petition for leave to appeal and directing this court to vacate its initial judgment (*People v. Smith*, 2017 IL App (1st) 151312). *People v. Smith*, No. 123082 (Ill. Mar. 21, 2018) (supervisory order). The supervisory order instructed us to consider the effect of *People v. Coats*, 2018 IL 121926, on the issue of whether defendant's convictions for robbery and aggravated battery of a senior citizen violate the one-act, one-crime rule. After reconsidering the issue, we again vacate the aggravated battery of a senior citizen conviction and hold that the convictions violate the one-act, one-crime rule, as the basis for both convictions—robbery and aggravated battery of a senior citizen—was Smith's single physical act of punching the victim.

¶ 2                          Background

¶ 3  Smith and codefendant Jerry Brown were tried on charges of first degree murder, aggravated battery of a senior citizen, robbery, and aggravated battery.

¶ 4  At trial, Deborah Halloran testified that William Burtner served as the commander of the Veterans of Foreign Wars (VFW) post in Midlothian, where she worked as bar manager. At about 9:30 a.m. on November 16, 2009, Burtner and Halloran prepared money for deposit into accounts the VFW maintained at the local A.J. Smith Bank. Deposits for three accounts were placed into three bank deposit bags. An additional amount was placed inside a cigar box so Burtner could open a new account. Burtner left the VFW post with the three deposit bags and the cigar box and drove to the bank.

¶ 5  A teller at the A.J. Smith Bank, Connie Weimar, testified that at about 10:15 a.m., she looked out the window and saw Burtner walking toward the bank carrying bank deposit bags. As Burtner approached the entrance, he passed behind a wall, and Weimar lost sight of him. Weimar next saw a man wearing a hooded sweatshirt walking quickly past the front of the bank toward Burtner. The hood covered the man's head, and Weimar could not see his face. Nothing was in the man's hands. The man disappeared from Weimar's sight for "a matter of seconds." When she next saw him, he was carrying something, had turned around, and was running to the adjacent Wendy's parking lot. He got into the front passenger seat of a black car that then took off. Weimar yelled, "Call 911." Two bank employees brought Burtner inside the bank and sat him down in a chair. Later, the man wearing the hooded sweatshirt was determined to be Smith.

¶ 6  Bank employee Tamara Esposito heard her supervisor yell, "Call 911, I believe somebody was just robbed." Esposito went to the front door and saw Burtner on the ground. Esposito and a security guard helped Burtner. He asked Esposito to retrieve a cigar box from the ground, which contained money and checks. Esposito saw a black sports car speeding out of the Wendy's parking lot. Esposito and the security guard brought Burtner inside the bank. Burtner was slightly bent over and holding his left side near his rib cage, had labored breathing, and was experiencing difficulty speaking. Burtner told Esposito that he was punched in his left side.

¶ 7  A paramedic treated Burtner at the bank. According to the paramedic, Burtner was holding his left side in his back rib area. Burtner complained of pain in that area and also pain when taking deep breaths. The paramedic administered oxygen and transported Burtner to the

hospital. The State presented a stipulation that Burtner told the paramedic that "he was hit from behind, and he fell."

¶ 8 Meanwhile, a high-speed police chase of the black car, driven by codefendant Brown, had ensued. Smith and Brown crashed into another automobile and came to a stop. They ran in opposite directions. Minutes later, police found Brown hiding underneath a car and placed him in custody. During a custodial search, police recovered over a thousand dollars from his right pocket. The A.J. Smith bank deposit bags and money were found inside the black car. The Illinois State Police crime laboratory tested blood samples taken from the passenger's side of the black car. Results of that testing indicated a DNA match with Smith, and he was arrested on February 5, 2010.

¶ 9 Mary Burtner, William's wife, testified that her husband was treated and released from the hospital on the day of the robbery. When he returned home, he was suffering pain, uncomfortable, and favoring his left side. The next day, he felt worse. The following morning, November 18, although still in a lot of pain, he went to chemotherapy for his lung cancer. At the hospital, he couldn't walk due to the pain and needed a wheelchair. When the couple arrived home at about 3 p.m., her husband was still holding his left side and was unable to get out of the car. She assisted him into their home and to bed. He fell asleep. She checked on him, and around 8:30 p.m., she found her husband unresponsive.

¶ 10 Paramedics arrived and performed CPR, administered cardiac medications, and transferred Burtner to the hospital. There were no signs of life. The State presented the death certificate indicating that Burtner was 65 years old.

¶ 11 An assistant chief medical examiner, Dr. Ponni Arunkumar, performed an autopsy. Burtner had lung cancer, two prior heart attacks, and heart disease, and there were three fractured ribs on the left side of his chest wall. The rib fractures, less than three or four days old, were consistent with being punched. Dr. Arunkumar determined that the cause of death was hypertensive cardiovascular disease, with the fractured ribs due to an assault as a significant contributing factor to a heart attack. In her opinion the cause of death was homicide.

¶ 12 The trial court found that the State failed to prove that Smith and Brown caused Burtner's death and so entered a not guilty on the charge of first degree murder. The trial court, however, found that defendants "certainly" inflicted great bodily harm on Burtner and found both men guilty of aggravated battery of a senior citizen. The trial court also found defendants guilty of robbery and aggravated battery. The aggravated battery counts were merged into the aggravated battery of a senior citizen offense. As Burtner was over the age of 60, the trial court elevated the robbery offense from a Class 2 to a Class 1 felony.

¶ 13 The trial court sentenced Smith to 12 years' imprisonment for robbery and a consecutive term of 6 years' imprisonment for aggravated battery of a senior citizen. The court expressly stated that Smith's criminal history and the nature and circumstances of the offense required consecutive sentences to protect the public from further criminal conduct by Smith.

¶ 14 Analysis

¶ 15 Smith contends that his conviction for aggravated battery of a senior citizen should be vacated because it violates the one-act, one-crime rule, as it is based on the same single physical act as his robbery conviction. Smith argues that the only evidence of a physical act committed against Burtner was the single punch that resulted in fractured ribs. Smith also

argues that the single punch cannot serve as the basis for both the aggravated battery and the force element for the robbery.

¶ 16    The State responds that Smith committed two separate acts. The State asserts that the punch was one act and the taking of the deposit bags was a separate act. The State contends that the common act of the punch can serve as the basis of both offenses because there was another separate act for the robbery.

¶ 17    Following remand by our supreme court, the State filed a supplemental brief addressing *Coats*. Defendant responded to the State's argument in his emergency motion for bond pending appeal, which we will consider as his response. The State replied to that argument in responding to defendant's motion for bond. Both parties maintain that their original arguments are supported by *Coats*.

¶ 18    As a threshold matter, Smith acknowledges that he forfeited this issue for appeal, as he failed to object to the multiple convictions at trial and did not raise the issue in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The parties agree, however, that a one-act, one-crime violation is reviewable under the second prong of the plain error doctrine because it affects the integrity of the judicial process. *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009).

¶ 19    Whether a conviction should be vacated under the one-act, one-crime rule presents a question of law, which we review *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Under this rule, Smith cannot be convicted of multiple offenses that are based on precisely the same single physical act, and where he is convicted of two offenses, the conviction for the less serious offense must be vacated. *Id.* Our supreme court has defined an "act" as "any overt or outward manifestation which will support a different offense." *People v. King*, 66 Ill. 2d 551, 566 (1977).

¶ 20    In clarifying the one-act, one-crime rule from *King*, the supreme court explained that a court must first determine whether a defendant's conduct consisted of a single physical act or separate acts. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). A defendant can be convicted of two offenses where a common act is part of both crimes. *Id.* at 188. But, where two offenses share a common act, there must be another separate act to sustain the two convictions. See *id.* at 188-89. " 'As long as there are multiple acts *as defined in King*, their interrelationship does not preclude multiple convictions ***.' (Emphasis added.)" *Id.* at 189 (quoting *People v. Myers*, 85 Ill. 2d 281, 288 (1981)).

¶ 21    The State charged Smith with robbery for taking money from Burtner by the use of force or by threatening the imminent use of force. 720 ILCS 5/18-1(a) (West 2008). The aggravated battery of a senior citizen offense alleged that Smith intentionally and knowingly caused great bodily harm to Burtner, a person 60 years of age or older, by striking him about the body, causing injuries. *Id.* § 12-4.6(a).

¶ 22    The evidence presented at trial demonstrates that Smith committed one single physical act—a single punch to Burtner's left side. The only evidence of any act by Smith was Esposito's testimony that Burtner told her that he was punched in his left side and the State's stipulation that Burtner told a paramedic that "he was hit from behind, and fell." The single punch was used as the basis for the aggravated battery conviction and as the element of force for the robbery conviction. There was no evidence of any other use of force or threat of force by Smith. There was no evidence of a verbal threat. Indeed, because Burtner was punched from

behind, he was likely unaware that Smith was approaching him. Based on this record, we find that Smith committed a single physical act.

¶ 23 The State asserts that the taking of the money from Burtner constituted a separate physical act for the robbery and, thus, the two convictions should stand. The State primarily relies on *People v. Pearson*, 331 Ill. App. 3d 312 (2002), which it claims is directly on point. In *Pearson*, the defendant grabbed a woman's purse off her shoulder. *Id.* at 314. A struggle ensued, knocking the woman to the ground. *Id.* The defendant was convicted of both robbery and aggravated battery. *Id.* at 316. On appeal, we concluded that the two convictions did not violate the one-act, one-crime rule, as the defendant committed two separate physical acts: he took the woman's purse, and then he pushed her to the ground. *Id.* at 322.

¶ 24 We find the facts here distinguishable from *Pearson*. There, the act of grabbing the woman's purse off her shoulder was, in and of itself, a taking of property by force. Pearson's subsequent act of pushing the woman to the ground was a separate act. Here, however, the evidence demonstrates that Smith committed only one physical act, the punch. There was no evidence that Smith used another act of force to take the money from Burtner. There is no evidence explaining how the taking occurred. There is no evidence of a struggle over the deposit bags. There is no evidence that Smith forcefully removed the deposit bags from Burtner's hand. It is possible that Burtner dropped the bags after he was punched and fell to the ground, as he apparently did with the cigar box. Accordingly, *Pearson* does not apply.

¶ 25 Based on this record, we find that Smith's convictions for robbery and aggravated battery of a senior citizen were both based on Smith's single physical act of punching Burtner. The two convictions violate the one-act, one-crime rule and cannot stand. The aggravated battery of a senior citizen offense is a Class 2 felony and, thus, less serious than the robbery of a senior citizen, which was elevated to Class 1. Accordingly, we vacate Smith's conviction for aggravated battery of a senior citizen.

¶ 26 We find that our supreme court's opinion in *Coats* does not change our disposition. In *Coats*, the defendant was convicted of several offenses, including being an armed habitual criminal and armed violence. *Coats*, 2018 IL 121926, ¶ 1. The evidence showed that Coats was found holding a handgun in one hand and two bags of drugs in the other. *Id.* ¶¶ 3-4. On appeal, Coats argued that his convictions for being an armed habitual criminal and armed violence violated the one-act, one-crime rule because they were both predicated on the same physical act of possessing the handgun. *Id.* ¶ 14. The supreme court found that, although the two offenses shared the common act of possession of the handgun, the armed violence conviction involved a second separate act: possession of the drugs. *Id.* ¶ 17. The court further found that since possession of the handgun was only part of the conduct that formed the basis for the armed violence conviction, the two offenses were not carved from precisely the same physical act. *Id.* Thus, the court concluded, the two acts did not violate the one-act, one-crime rule. *Id.* ¶ 32.

¶ 27 In making its ruling, the supreme court rejected Coats's argument that the *King* analysis implicitly required a determination of whether the offenses shared a "crucial" act. *Id.* ¶ 18. Coats claimed that if the two offenses shared a common act that formed the "crux" or "essence" of the crime, multiple convictions could not stand. *Id.* In rejecting the defendant's construction of *King*, the court stated that it had never applied the one-act, one-crime rule in this manner. *Id.* ¶¶ 18-19.

¶ 28 Unlike *Coats*, here, the evidence showed that the defendant committed only one physical act—Smith's single punch to Burtner's left side. No evidence indicates a second separate act or how the taking of the deposit bags occurred. In addition, we reject the State's argument, raised in its supplemental brief, that this court's analysis "implicitly hints at a 'crux' of the crime type of finding" because the force element was crucial to both offenses. We made no "crux" or "essence" of the crime finding. Simply stated, no evidence of a separate physical act exists to support a second conviction.

¶ 29 We vacate the aggravated battery of a senior citizen conviction and affirm Smith's conviction and sentence for robbery of a senior citizen.

¶ 30 Affirmed in part and vacated in part.