# Illinois Official Reports

## Supreme Court

---

### *People v. Smith*, 2019 IL 123901

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEVIE SMITH, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JERRY BROWN, Appellee. |
| Docket Nos. | 123901, 123902 cons. |
| Filed | September 19, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Michele M. Pitman, Judge, presiding. |
| Judgment | No. 123901, Reversed.<br>No. 123902, Reversed and remanded. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Erin M. O'Connell, Assistant Attorneys General, of Chicago, of counsel), for the People.<br><br>James E. Chadd, State Appellate Defender, Patricia Mysza, Deputy Defender, and Christopher Kopacz, Assistant Appellate Defender, the Office of the State Appellate Defender, of Chicago, for appellee Jerry Brown. |

Christopher Cronson and Brett Cronson, of Cronson & Cronson, Ltd., of Waukegan, for other appellee.

Justices JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

Justice Neville took no part in the decision.

**OPINION**

¶ 1 Following simultaneous but severed bench trials in the circuit court of Cook County, defendants Stevie Smith and Jerry Brown were convicted of robbery and aggravated battery of a senior citizen in which defendants caused great bodily harm. In separate appeals, the appellate court vacated defendants' convictions for aggravated battery of a senior citizen under one-act, one-crime principles. *People v. Brown*, 2018 IL App (1st) 151311-B; *People v. Smith*, 2018 IL App (1st) 151312-B. For the following reasons, we reverse the judgments of the appellate court.

¶ 2                                            BACKGROUND

¶ 3 Defendants were charged by indictment with first degree felony murder predicated on robbery (720 ILCS 5/9-1(a)(3) (West 2008)), aggravated battery of a senior citizen (*id.* § 12-4.6(a)), robbery (*id.* § 18-1(a)), and several counts of aggravated battery (*id.* § 12-4(a), (b)(8), (b)(10)).

¶ 4 The evidence at trial established that on the morning of November 16, 2009, William Burtner, a 65-year-old veteran, was attacked while attempting to deposit money at the A.J. Smith bank in Midlothian, Illinois. Burtner, in his role as the commander of the Veterans of Foreign Wars (VFW) post, was responsible for making the deposits on behalf of the VFW. That morning, he was walking toward the bank entrance, carrying multiple deposit bags with $2100 in cash and a cigar box containing cash and checks from a fundraiser held the previous night.

¶ 5 A bank teller saw Burtner, a regular customer, walking toward the entrance with the deposit bags in hand. She saw a man in a hooded sweatshirt walk quickly behind him. After briefly losing sight of both men as they passed behind a wall, she saw the hooded man run in the opposite direction, carrying something in his hands. The man, later identified as defendant Smith, got into the passenger seat of a black car driven by codefendant Brown, and the car sped off.

¶ 6 A bank employee found Burtner lying on the ground by the front entrance, taking labored breaths, and grabbing his left side. Burtner told her that he had been punched in the side and asked her to retrieve the cigar box, which was on the ground. Burtner later told a paramedic that he fell after being hit from behind. At the hospital, Burtner complained of left side pain,

difficulty breathing, and two bruised knees. X-rays taken at that time did not reveal broken ribs.

¶ 7    Meanwhile, after a high-speed police chase, the black car crashed and came to a stop. Defendants ran in opposite directions. Police found defendant Brown minutes later hiding underneath a car. During a custodial search, police recovered $1200 in cash from defendant Brown's pocket; they also recovered the A.J. Smith bank deposit bags and money from inside the car. DNA evidence from blood samples taken from the car was linked to defendant Smith.

¶ 8    Three days after the incident, Burtner died. Following an autopsy, the medical examiner's opinion was that the cause of death was a heart attack and that the assault was a significant contributing factor because it stressed Burtner's already weakened cardiovascular system. Burtner had heart disease, had two prior heart attacks, and suffered from lung cancer. The internal examination revealed three broken ribs on Burtner's left side and hemorrhaging on the left chest wall consistent with being punched. It was the medical examiner's opinion that the injuries were no more than four days old.

¶ 9    The trial court acquitted defendants on the felony murder charge but convicted them of robbery and aggravated battery of a senior citizen in which they caused great bodily harm, after merging the other aggravated battery counts. The court also found that consecutive sentences were warranted by the nature of the crimes and defendants' lengthy criminal histories. Smith was sentenced to 12 years for robbery and 6 years for aggravated battery of a senior citizen. Brown was sentenced to 15 years for robbery and 7 years for aggravated battery of a senior citizen.

¶ 10    On appeal, defendants argued for the first time that their convictions for aggravated battery of a senior citizen violated the one-act, one-crime rule because they were predicated on the same conduct as the robbery conviction. In each case, under a plain-error analysis, the appellate court agreed, finding that the evidence demonstrated that defendants committed one single physical act—a punch to Burtner's left side. The court found that the single punch became "the basis for the aggravated battery conviction, and as the element of force for the robbery conviction." *People v. Brown*, 2017 IL App (1st) 151311-U, ¶¶ 22, 25, *vacated by* No. 123080 (Ill. Mar. 21, 2018) (supervisory order); *People v. Smith*, 2017 IL App (1st) 151312, ¶¶ 22, 25, *vacated by* No. 123082 (Ill. Mar. 21, 2018) (supervisory order). Accordingly, the court vacated defendants' convictions for aggravated battery of a senior citizen. *Brown*, 2017 IL App (1st) 151311-U, ¶ 25; *Smith*, 2017 IL App (1st) 151312, ¶ 27.

¶ 11    Subsequently, this court issued supervisory orders in each case directing the appellate court to reconsider its decision in light of *People v. Coats*, 2018 IL 121926. On remand, the appellate court found *Coats* distinguishable and reiterated its conclusions that there was no evidence of a separate physical act to support both convictions. *Brown*, 2018 IL App (1st) 151311-B, ¶¶ 26-28; *Smith*, 2018 IL App (1st) 151312-B, ¶¶ 26-28. We allowed the State's petitions for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2018)) and consolidated the cases for review.

¶ 12                                         ANALYSIS

¶ 13    The sole issue in this appeal involves the application of the one-act, one-crime rule, which was established by this court in *People v. King*, 66 Ill. 2d 551 (1977), and reaffirmed in *People v. Rodriguez*, 169 Ill. 2d 183 (1996). The one-act, one-crime rule prohibits convictions for

multiple offenses that are based on precisely the same physical act. *Coats*, 2018 IL 121926, ¶ 11 (citing *King*, 66 Ill. 2d at 566).

¶ 14    Initially, we note that both defendants forfeited their claims by failing to raise this issue in the trial court. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). As the State recognizes, however, plain errors affecting substantial rights may be reviewed on appeal. Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). An alleged one-act, one-crime violation is reviewable under the second prong of the plain-error doctrine because it affects the integrity of the judicial process. *Coats*, 2018 IL 121926, ¶ 10. Although the one-act, one-crime rule is not of constitutional dimension, its purpose is to prevent the prejudicial effect that could result in those instances where more than one offense is carved from the same physical act. See *People v. Artis*, 232 Ill. 2d 156, 164-68 (2009). Under plain-error review, we begin by determining whether any error occurred. *People v. Herron*, 215 Ill. 2d 167, 187 (2005).

¶ 15    In considering whether a violation of the rule has occurred, we must first determine whether a defendant's conduct consisted of a single physical act or separate acts. *Coats*, 2018 IL 121926, ¶ 12. Multiple convictions are improper if they are based on precisely the same physical act. If, however, the defendant's conduct is based on more than one physical act, the court then proceeds to the second step, determining whether any of the offenses are lesser-included offenses. *Id.* If not, then multiple convictions are proper. *Id.* Whether a violation of the rule has occurred is a question of law that is reviewed *de novo*. *Id.*

¶ 16                                  Defendants' Conduct

¶ 17    In this case, the appellate court concluded that the robbery offense and the aggravated battery of a senior citizen offense were based on the same physical act: a single punch to Burtner's left side. The court reasoned that the evidence at trial showed a "single punch was used as the basis for the aggravated battery conviction and as the element of force for the robbery conviction." *Smith*, 2018 IL App (1st) 151312-B, ¶ 22; *Brown*, 2018 IL App (1st) 151311-B, ¶ 22. Focusing on the single punch, the appellate court held that convictions for the two offenses violated one-act, one-crime principles. *Smith*, 2018 IL App (1st) 151312-B, ¶ 25; *Brown*, 2018 IL App (1st) 151311-B, ¶ 25.

¶ 18    The State argues that this interpretation negates the taking of the property as a separate act of wrongful conduct that supported the robbery offense. As we have previously articulated, the definition of an "act" for purposes of this analysis is simply "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566; see *Rodriguez*, 169 Ill. 2d at 188. Additionally, we have explained that a person can be guilty of two offenses when a common act is (1) part of both offenses or (2) part of one offense and the only act of the other offense. *Coats*, 2018 IL 121926, ¶ 15; *Rodriguez*, 169 Ill. 2d at 188.

¶ 19    To illustrate, we set out several examples in *Coats* where multiple convictions were proper. 2018 IL 121926, ¶ 16. In those illustrated cases, both offenses involved a common act that served as the basis for both convictions, but one offense involved an additional act not required for the other offense. Since the common act was only part of one offense and the sole act of the other offense, the two offenses were not carved from precisely the same physical act. See, *e.g.*, *People v. McLaurin*, 184 Ill. 2d 58, 105 (1998) (multiple convictions for intentional murder and home invasion were proper because, although they both involved the act of setting the fire, the additional act of entering the dwelling of the victim was a separate act supporting

- 4 -

the home invasion); *People v. Tate*, 106 Ill. App. 3d 774, 778-79 (1982) (the wound inflicted on a victim could serve both as the bodily harm to satisfy the aggravated battery conviction and the injury to satisfy the home invasion conviction where home invasion also involved an unlawful entry).

¶ 20　　Applying these principles to the present case, the evidence at trial established that Burtner had possession of the bank bags. Defendant Smith, for whom defendant Brown was accountable, punched Burtner in the side. Burtner fell to the ground. Defendant Smith then took the bank bags from Burtner's person or his presence. Accordingly, defendant's conduct included two separate physical acts—the punch and the taking of the property.

¶ 21　　Our task then is to determine how many offenses can be carved from defendants' culpable conduct. In order to ascertain the answer, we look to the proscribed conduct as charged in both offenses. The charge of aggravated battery of a senior citizen alleged that defendants caused great bodily harm to Burtner by striking him about the body. The charge of robbery alleged that defendants took money from Burtner's person or presence by force or by threatening the imminent use of force.

¶ 22　　The punch supported the aggravated battery conviction and served as the force necessary to effectuate the robbery. Nevertheless, the use of force was only part of the wrongful conduct of the robbery offense. Robbery is a compound offense; it includes both a taking and an act of force or threat of force. 720 ILCS 5/18-1(a) (West 2008) ("A person commits robbery when he takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force."); *People v. Dennis*, 181 Ill. 2d 87, 103 (1998) (robbery ends when force and taking have ceased). A taking entails depriving a person of property. *People v. Banks*, 75 Ill. 2d 383, 389 (1979). A deprivation has been defined to mean to take away, to appropriate, or to dispossess the owner, and it involves a substantial interference with property rights. *Id.* (applying Webster's Third New International Dictionary (1971) and Black's Law Dictionary (rev. 4th ed. 1968) definitions).

¶ 23　　As charged, defendants "took United States currency from the person or presence of [Burtner]." That conduct, combined with the additional allegations that they did so by force, set out the conduct elements of robbery. See *People v. Jones*, 149 Ill. 2d 288, 296 (1992). Although the two acts of misconduct are interrelated, under *King* and *Rodriguez*, defendants' conduct in taking the property from Burtner provides a separate act upon which to support the robbery offense. See *Rodriguez*, 169 Ill. 2d at 188-89; *People v. Dixon*, 91 Ill. 2d 346, 355 (1982) (multiple acts may be found, as defined in *King*, even where the acts are interrelated). Thus, the two offenses were not carved from precisely the same physical act.

¶ 24　　Nevertheless, defendants maintain that we must treat the punch and the taking of the victim's property as a single act of culpable conduct here because the taking element of robbery does not require that a defendant acquire possession of the property. They argue that the robbery was complete when the single punch to Burtner "caused him to part with the bank deposit bags." Thus, defendants assert that the taking of the property occurred after the robbery was complete. In support, they cite *People v. Smith*, 78 Ill. 2d 298 (1980), and *People v. Gaines*, 88 Ill. 2d 342 (1981).

¶ 25　　Defendants take *Smith* and *Gaines* out of context. Neither case compels a different result here. Neither case addressed the one-act, one-crime rule under *King*. Rather, those cases involved the sufficiency of the evidence to support a robbery offense.

¶ 26    In *Smith*, the defendant made a bomb threat over the telephone to a store manager, demanding that the manager deposit money in a nearby telephone booth. The manager followed the defendant's instructions, leaving the money in the phone booth. The defendant was then seen picking up the bag and taking it away. On appeal, the defendant argued that his actions amounted only to a theft by threat. He maintained that the offense of robbery was not established because there was no taking "from the victim's person or presence."

¶ 27    We rejected that argument, explaining that "[t]he requirement that there be a taking 'from the person or presence' is not, however, *limited to* removal of the property from the victim's person or from the immediate presence of the owner, possessor or custodian." (Emphasis added.) *Smith*, 78 Ill. 2d at 302. Rather, the robbery was committed when the property taken was sufficiently within the possession or control of the victim so that the force or threat of force caused the victim to part with the property against his will. *Id.* at 303.[1]

¶ 28    In *Gaines*, the defendant threatened the victim with a gun, stating that it was a " 'stick-up.' " In response, the victim pulled two dollar bills out of his pocket and dropped them onto the floor. Later, only one of the bills was recovered by the victim, suggesting that the other bill might have been lying somewhere on the floor. The defendant argued that no robbery took place because no evidence established that he took physical possession of the bills he forced the victim to surrender. *Gaines*, 88 Ill. 2d at 367. This court rejected that argument, finding that it was not necessary that the defendant pick up and carry off the bills. *Id.* We found there was sufficient evidence that the threat of force caused the victim to part with possession of the property against his will by placing the bills on the floor. *Id.*

¶ 29    Those fact patterns are simply not presented here. Furthermore, as we explained in *Dennis*, *Smith* is merely an example of a case that "define[s] the *minimum* conduct required to constitute a completed robbery." (Emphasis added.) *Dennis*, 181 Ill. 2d at 103. The commission of the robbery ends "when force and taking, the elements which constitute the offense, have ceased." *Id.*

¶ 30    The mere fact that the defendants in *Smith* and *Gaines* used threats of violence as the means to effectuate the taking of the property—or in other words as a means to dispossess the victim of the property—does not negate the fact that, here, defendant Smith indeed deprived Burtner of his property by taking control of it from his person or presence. That taking constituted a separate act of culpable conduct that supported the robbery conviction in this case. This case is one in which we "must not lose sight of the forest for the trees." *Rodriguez*, 169 Ill. 2d at 188.

¶ 31    Moreover, to treat both offenses as being carved from a single act would require us to ignore the separate harms caused by defendants' conduct as well as the legislature's intent to punish those distinct harms—the great bodily harm involved in committing the battery to the person in the aggravated battery offense and the separate interference with a property right in the robbery offense. Compare 720 ILCS 5/part B (West 2016) (codifying the offenses directed against the person), with 720 ILCS 5/part C (West 2016) (codifying the offenses directed against property). Despite the possible overlap of force in each statute, the robbery statute

---

[1]Notably, *Smith* cites *Brinkley v. United States*, 560 F.2d 871, 873 (8th Cir. 1977), in support. *Smith*, 78 Ill. 2d at 303. That case relied, in part, on the fact that the defendant was charged with *attempted* robbery, which only required an *attempted* taking.

punishes the wrongful taking of property, whereas the aggravated battery statute punishes the great bodily injury to the person. Thus, our holding is consistent with the legislative intent to treat defendants' convictions here as being carved from separate acts.

¶ 32    Defendants are mistaken that our decision is inconsistent with *People v. Harvey*, 366 Ill. App. 3d 119 (2006), and *People v. Pearson*, 331 Ill. App. 3d 312 (2002). In *Harvey*, the defendant was convicted of armed robbery, where he personally discharged a firearm causing great bodily harm (720 ILCS 5/18-2(a)(4) (West 2000)) as well as aggravated battery by means of discharging a firearm causing injury to another (*id.* § 12-4.2(a)(2)). *Harvey*, 366 Ill. App. 3d at 121. The State conceded a one-act, one-crime problem, and the court accepted its concession with no detailed analysis other than a general citation to *King*. *Id.* at 122. Nevertheless, the elements of the relevant statutes demonstrate that the aggravated battery offense was a lesser-included offense, thereby rendering that conviction a violation of the one-act, one-crime rule. See *People v. Miller*, 238 Ill. 2d 161, 166 (2010) (applying abstract elements test).

¶ 33    *Pearson* is consistent with our ruling here. In that case, the court held that the act of grabbing the victim's purse and the separate act of pushing her down constituted multiple acts of culpable conduct that would support convictions for both robbery and aggravated battery. *Pearson*, 331 Ill. App. 3d at 322.

¶ 34    Lastly, in *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 1, the defendant was convicted of aggravated unlawful restraint and armed robbery. In finding a one-act, one-crime rule violation, the court analyzed the armed robbery as a single course of conduct in which the restraint was "inherent" in the robbery and not independent of it. *Id.* ¶¶ 54-55. The court's analysis relied on prior case law that essentially considered unlawful restraint as a lesser-included offense unless specifically charged as "independent" conduct. *Id.* ¶ 48; see, *e.g.*, *People v. Bowen*, 241 Ill. App. 3d 608, 628 (1993) (noting that unlawful restraint was conduct "inherent in every case of criminal sexual assault by force" and concluding that as charged it was not "independent of the sexual assault"). Notably, the force element of criminal sexual assault was, by statutory definition, force that included physical restraint. See 720 ILCS 5/12-12(d)(2) (West 2008). By contrast, aggravated battery that causes great bodily harm is not "inherent" in a robbery.

¶ 35    Accordingly, we reject defendants' contention that their convictions for conduct which involved both a battery, causing great bodily harm, and a wrongful taking of property, interfering with property rights, were carved from precisely the same physical act.

¶ 36                                B. Lesser-Included Offenses

¶ 37    Moving to the second step of the analysis, we must determine whether any of the offenses are lesser-included ones. When the issue of lesser-included offenses arises in the context of a one-act, one-crime challenge, we apply the abstract elements approach. *Coats*, 2018 IL 121926, ¶ 30. As we have explained, this approach "will ensure that defendants are held accountable for the full measure of their conduct and harm caused." *Miller*, 238 Ill. 2d at 173. Under the abstract elements approach, we compare the statutory elements of the two offenses. If all the elements of one offense are included within the second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-

included offense of the second. *Id.* at 166. In that case, the less serious offense must be vacated. See *People v. Garcia*, 179 Ill. 2d 55, 71 (1997).

¶ 38 Defendants do not dispute that aggravated battery of a senior citizen is not a lesser-included offense of robbery. Under section 18-1 of the Criminal Code of 2012, "[a] person commits robbery when he takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2008). Under section 12-4.6(a), "[a] person who, in committing battery, intentionally or knowingly causes great bodily harm or permanent disability or disfigurement to an individual of 60 years of age or older commits aggravated battery of a senior citizen." *Id.* § 12-4.6(a).[2]

¶ 39 Not all the elements of aggravated battery of a senior citizen are included in the offense of robbery, and the aggravated battery offense contains elements that are not included in robbery. Aggravated battery requires knowingly causing great bodily harm and knowledge that the victim is 60 years of age or older; robbery does not. Likewise, robbery requires a taking of property by force or threat of force from the person or presence of another, whereas aggravated battery does not. Thus, under the abstract elements approach, the aggravated battery of a senior citizen offense is not a lesser-included offense of robbery.

¶ 40                                                    CONCLUSION

¶ 41 For the reasons set forth above, defendants' convictions for robbery and aggravated battery of a senior citizen were proper under the one-act, one-crime rule because they were based on separate acts of wrongful conduct and are not lesser-included offenses. Accordingly, we find no plain error and reverse the judgments of the appellate court. We remand for consideration of defendant Brown's remaining argument.

¶ 42 No. 123901, Reversed.

¶ 43 No. 123902, Reversed and remanded.

¶ 44 JUSTICE NEVILLE took no part in the consideration or decision of this case.

---

[2]This offense is now recodified as a form of aggravated battery under section 12-3.05(a)(4) of the Criminal Code of 2012. 720 ILCS 5/12-3.05(a)(4) (West 2016).