2024 IL App (1st) 221686-U

FIFTH DIVISION
February 16, 2024

No. 1-22-1686

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CR 338 |
| | ) | |
| GERARDO JASSO, | ) | Honorable |
| | ) | Shelley Sutker-Dermer, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for aggravated discharge of a firearm, where the trial evidence showed defendant discharged a firearm in the direction of a police officer. We vacate the sentences on three of those convictions as they violate the one-act, one-crime rule.

¶ 2    Following a bench trial, defendant Gerardo Jasso was found guilty of four counts of aggravated discharge of a firearm and one count of unlawful use of a weapon by a felon (UUWF). He received concurrent prison sentences of 14 years for each count of aggravated discharge of a firearm and 5 years for the single count of UUWF. On appeal, he argues both that the State failed to prove him guilty beyond a reasonable doubt of aggravated discharge of a firearm and that his

four aggravated discharge of a firearm convictions violate the one-act, one-crime rule. The State concedes the one-act, one-crime issue. We affirm in part, vacate in part, and remand for correction of the mittimus.

¶ 3                                I. BACKGROUND

¶ 4     Mr. Jasso was charged by indictment with 16 counts stemming from a November 28, 2020, shooting. The State proceeded to trial on six counts of attempted first degree murder, one count of UUWF, and, relevant here, four counts of aggravated discharge of a firearm. Three of the latter counts alleged Mr. Jasso committed aggravated discharge of a firearm under section 24-1.2(a)(3) of the Illinois Criminal Code of 2012 (Code) (720 ILCS 5/24-1.2(a)(3) (West 2020)), when he "knowingly discharged a firearm in the direction of a person he knew to be a peace officer, to wit: Peter Niznik," while Officer Niznik was engaged in the execution of his official duties (count IX), to prevent Officer Niznik from performing those duties (count X), and in retaliation for Officer Niznik performing his official duties (count XI). Count XII alleged Mr. Jasso committed aggravated discharge under section 24-1.2(a)(2) of the Code (720 ILCS 5/24-1.2(a)(2) (West 2020)), when he "knowingly discharged a firearm in the direction of another person, to wit: Peter Niznik." The State nol-prossed the remaining counts.

¶ 5     At trial, Chicago police officer Niznik testified that at about 3:15 p.m. on November 28, 2020, he and his partner, Officer Daniel Vo, were wearing uniforms in an unmarked vehicle stopped at an intersection. Officer Niznik saw Mr. Jasso walking with a green can in his hand. When Officer Vo called Mr. Jasso to the police vehicle, Mr. Jasso looked at the officers and kept walking. Officer Niznik exited the vehicle and Mr. Jasso fled.

¶ 6     Officer Niznik chased Mr. Jasso down an alley. Officer Niznik observed a firearm and an extended magazine in Mr. Jasso's right hand as he ran. Officer Niznik repeatedly told Mr. Jasso to

drop the firearm, but Mr. Jasso did not. Mr. Jasso ran to the left side of the alley, veered to the right, and "all in one motion *** slowed down almost to a complete stop." Mr. Jasso turned his body to the right, "pointed the firearm at [Officer Niznik] and shot twice at [him]" from several garage lengths away. Officer Niznik immediately fired back twice and hid behind a garbage can because he "was afraid [Mr. Jasso] was going to shoot [him] again." Mr. Jasso continued running down the alley. Officers Niznik and Vo found Mr. Jasso lying on the ground near a basement door in a gangway and placed him into custody.

¶ 7     The State published video footage of Officer Niznik's body worn camera, the foundation of which was stipulated to, and entered the video into evidence. We have viewed the video. It depicts the chase that Officer Niznik described in his testimony and shows that the chase took place in daylight. The video shakes heavily while Officer Niznik runs, making it difficult to view details in the video unless it is slowed down significantly. Mr. Jasso is wearing a black hooded sweatshirt and a black baseball cap in the video.

¶ 8     At the point where Officer Niznik follows Mr. Jasso down the alley, Officer Niznik is heard repeatedly yelling at Mr. Jasso to drop his firearm and eventually raises a firearm up toward Mr. Jasso. Mr. Jasso veers sharply to the left, then to the right. Mr. Jasso twists to the right and looks over his right shoulder, so that the length of the brim of his cap can be seen, but his back is still facing Officer Niznik. As two gunshots are heard, Mr. Jasso's right arm appears to swing back in Officer Niznik's direction. At this point, Mr. Jasso is not completely visible, as his black sweatshirt blends in with the shadows and dark objects in front of him. Officer Niznik then holds his own firearm with two hands, discharges two shots, and hides behind a garbage can. Mr. Jasso continues running until he is out of sight of the camera.

¶ 9     The State also published and entered into evidence video footage captured by a surveillance

camera on a garage facing the alley in which the shooting occurred. The video does not contain audio. In the video, we observe Mr. Jasso running from Officer Niznik with a firearm in his right hand and veering to the left. As he then veers to the right, he angles his right arm over his left arm and points the firearm in Officer Niznik's direction. Mr. Jasso runs out of the frame. Based on our viewing of the footage from Officer Niznik's body worn camera, it appears that Mr. Jasso did not discharge the firearm while he was within the surveillance camera's line of sight.

¶ 10    On cross-examination, Officer Niznik confirmed that Mr. Jasso almost completely stopped when he discharged the firearm and then started running again "[a]t some point." Officer Niznik could not recall telling Detective Roxana Hopps that Mr. Jasso almost came to a complete stop and turned around to shoot at him. He also did not recall telling Detective Hopps that Mr. Jasso was still running and turned his head and body to the right when he shot at Officer Niznik. When Mr. Jasso "shot at [him]," Officer Niznik was not hit and did not hear any bullets passing him or hitting anything near him.

¶ 11    The State entered a stipulation that samples from the gun shot residue (GSR) kit administered on Mr. Jasso showed his right hand contained GSR particles indicating he discharged a firearm, contacted a primer GSR-related item, or had his right hand in the environment of a discharged firearm.

¶ 12    Mr. Jasso called Detective Hopps, who testified that on November 28, 2020, she interviewed Officer Niznik about the incident. Officer Niznik never told Detective Hopps that Mr. Jasso "slowed down to almost a complete stop" when he discharged the firearm. Rather, Officer Niznik reported that Mr. Jasso was running "the whole time" and turned his body in Officer Niznik's direction to fire at him.

¶ 13    Mr. Jasso testified that on November 28, 2020, at about 3 p.m., he was at the intersection

of Rosemont and Artesian Avenues walking home with an alcoholic beverage in his hand. He saw police officers approaching and heard them asking him something. Mr. Jasso kept walking and then fled because he had a firearm. He fled into an alley and pulled the firearm out of his waistband so he could run faster. Eventually, he discharged the firearm twice, at an angle in front of him and to the right, to "scare the police officer away from [him]" and "get away."

¶ 14    Mr. Jasso denied that he intended to shoot or hurt the officer. He aimed toward the garages to his right and believed that he shot a garage. He also denied that he stopped running, explaining that he turned his body to face the officer "[j]ust a little" to look back and see if he was still being chased. Viewing Officer Niznik's body worn camera footage, Mr. Jasso testified that his arm could be seen angled forward to his right toward a garage when he discharged the firearm both times. He denied that at any point he aimed the firearm at the officer and pulled the trigger.

¶ 15    On cross-examination, Mr. Jasso confirmed that he was under the influence of alcohol when the incident occurred. He confirmed that he took his firearm out of his waistband to run faster but kept the firearm on him. The State asked Mr. Jasso if he took the firearm in his hand and swung his arm behind him, and Mr. Jasso replied, "I was running." Mr. Jasso further stated, "I swing my arm in an angle, yeah." He confirmed that he also turned his head to look over his right shoulder and saw the officer still behind him but denied that he did so when he discharged the firearm. Rather, he "still turned forward," "pointed to [his] right once he knew they were behind [him]," and "shot to get them off [him]." Mr. Jasso confirmed he discharged his firearm a second time knowing the officer was still behind him in the alley.

¶ 16    The trial court found Mr. Jasso guilty of four counts of aggravated discharge of a firearm and one count of UUWF, and acquitted Mr. Jasso of attempted first degree murder. The court indicated that it had had the opportunity to view the videos, observe the witnesses in court, and

determine the witnesses' credibility from their testimony. The court found the State failed to establish the specific intent to kill necessary to sustain a conviction for attempted first degree murder. However, the court found that Mr. Jasso intended to discharge the firearm, pointed it in Officer Niznik's direction, and discharged it. It rejected Mr. Jasso's request for a finding of reckless discharge instead. The court said, "There is no question in this court's mind that the State established the elements of aggravated discharge in taking the entire case in its totality."

¶ 17    Mr. Jasso filed a motion to reconsider, challenging the sufficiency of the evidence and arguing that the body worn camera footage showed that he was not pointing the firearm at the officer at the time of the shooting. During the hearing on Mr. Jasso's motion, the court viewed the video footage from Officer Niznik's body worn camera "at slow motion using the rewind over and over and over again." The court denied Mr. Jasso's motion, explaining that it did not agree with defense counsel's assessment of the footage.

¶ 18    The court sentenced Mr. Jasso to concurrent prison sentences of 14 years each for the four counts of aggravated discharge of a firearm (counts IX, X, XI, and XII) and 5 years for the count of UUWF (count XV).

¶ 19                              II. JURISDICTION

¶ 20    Mr. Jasso was sentenced on October 28, 2022, and he timely filed his notice of appeal on November 7, 2022. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 21                              III. ANALYSIS

¶ 22    On appeal, Mr. Jasso argues that the State failed to prove him guilty beyond a reasonable doubt of aggravated discharge of a firearm. He contends Officer Niznik's testimony was directly

contradicted by the video evidence from his body worn camera, which showed Mr. Jasso did not aim and discharge the firearm in Officer Niznik's direction. Mr. Jasso argues that we should either reverse his conviction or reduce it to the lesser-included offense of reckless discharge of a firearm.

¶ 23    When reviewing the sufficiency of the evidence at trial, our inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We will not retry the defendant when reviewing a challenge to the sufficiency of the evidence. *People v. Nere*, 2018 IL 122566, ¶ 69. "[I]t is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts," and we will not substitute our judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *People v. Gray*, 2017 IL 120958, ¶ 35. However, we give less deference to a trial court's determinations of fact when they are based on evidence other than live witness testimony, as the trial court does not occupy a superior position in evaluating said evidence. *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 29.

¶ 24    The trier of fact need not "disregard inferences that flow normally from the evidence before it," or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. "The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant." *Gray*, 2017 IL 120958, ¶ 36. We "must allow all reasonable inferences from the record in favor of the prosecution" (*People v. Givens*, 237 Ill. 2d 311, 334 (2010)), and will not reverse a conviction unless the evidence is "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the Mr. Jasso's guilt" (*People v. Bradford*, 2016 IL 118674, ¶ 12).

¶ 25    Under section 24-1.2(a)(3) of the Code (720 ILCS 5/24-1.2(a)(3) (West 2020)), a person commits aggravated discharge of a firearm when he or she knowingly or intentionally discharges a firearm in the direction of a person he or she knows to be a peace officer while the officer is engaged in the execution of any of his or her official duties, to prevent the officer from performing his or her official duties, or in retaliation for the officer performing his or her official duties. An essential element of the offense is "the offender's awareness of the presence of an individual in the direction in which he fires a weapon [citation]; that is, this crime makes it unlawful to intentionally fire a weapon knowing that weapon is being fired at or in the direction of someone else." *People v. Kasp*, 352 Ill. App. 3d 180, 187-88 (2004).

¶ 26    Mr. Jasso does not dispute that he discharged a firearm while running from Officer Niznik down an alley, or that he knew Officer Niznik was a peace officer. Rather, he contends the evidence is insufficient to show that he discharged the firearm in Officer Niznik's direction.

¶ 27    In this case, the evidence was sufficient for a rational trier of fact to find Mr. Jasso guilty of aggravated discharge of a firearm beyond a reasonable doubt. Officer Niznik testified that Mr. Jasso held a firearm as Officer Niznik chased him down an alley. Mr. Jasso ran down the left side of the alley, veered to the right, "slowed down almost to a complete stop," turned his body to the right, and then discharged the firearm in Officer Niznik's direction twice. Officer Niznik returned fire and hid behind a garbage can because he feared Mr. Jasso "was going to shoot [him] again." Officer Niznik's testimony, standing alone, was sufficient to establish that Mr. Jasso discharged a firearm in his direction. See *Gray*, 2017 IL 120958, ¶ 36 ("The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant."). The court explicitly stated that it determined the credibility of the witnesses from their testimony. We will not substitute our judgment for that of the trial court on witness credibility

and the weight of the evidence. *Bradford*, 2016 IL 118674, ¶ 12.

¶ 28    Although corroborating evidence is not required to support a conviction (see *People v. Little*, 322 Ill. App. 3d 607, 618 (2001) (a conviction can be based upon the testimony of a single credible witness)), the video evidence captured by Officer Niznik's body worn camera corroborates some details of his testimony regarding the chase through the alley. The video demonstrates, consistent with the officer's testimony, that Mr. Jasso veered to the right side of the alley, then two shots were fired, and Officer Niznik returned fire.

¶ 29    On the crucial issue of whether Mr. Jasso pointed his gun towards Officer Niznik, the body worn camera video footage does not plainly contradict Officer Niznik's testimony. Officer Niznik's camera shakes dramatically throughout the video while he is running, Mr. Jasso is several garage lengths ahead of Officer Niznik when he discharges the firearm, and Mr. Jasso is wearing black clothing that blends with the environment around him. Contrary to Mr. Jasso's assertion, the footage does not definitively show that Mr. Jasso discharged the firearm in front of him and to the right toward the garages, in a direction away from Officer Niznik. Rather, from what we can discern in the video, Mr. Jasso appears to, in a fluid motion, look over his right shoulder and swing his right arm back, at about the same time that he discharges the firearm.

¶ 30    Thus, while the video does not explicitly show that Mr. Jasso pointed a firearm in Officer Niznik's direction when he discharged the firearm, nor does it rebut the officer's testimony that Mr. Jasso did so. See *People v. Towner*, 2022 IL App (1st) 192018-U, ¶¶ 30-32 (video evidence did not contradict a police officer's testimony that the defendant pointed a BB gun at him where the video was ambiguous and "did not disprove that [the] defendant did so"); *People v. Magnuson*, 2019 IL App (2d) 160551, ¶ 48 (while the video evidence "somewhat impeach[ed]" the testifying officers, it was not clear enough to either contradict or corroborate the defendant's testimony, and

the trier of fact could have reasonably resolved any apparent conflicts in the evidence against the defendant). Under these circumstances, we cannot say that the trial court was required to reject Officer Niznik's testimony based on the video evidence,

¶ 31     Mr. Jasso also argues that, because the trial court acquitted him of attempted first degree murder, the court implicitly rejected Officer Niznik's testimony that Mr. Jasso discharged the firearm in his direction. We disagree.

¶ 32     The offense of attempted murder is a specific-intent crime in which the State must show a defendant committed an act with the specific intent to kill the victim. *People v. Edmondson*, 2018 IL App (1st) 151381, ¶ 65. The offense of aggravated discharge, however, only requires a general showing that the defendant intentionally fired a weapon knowing it was being fired at or in the direction of someone else. *Kasp*, 352 Ill. App. 3d at 187-88. It is true that the mere act of a defendant discharging a firearm at a victim can support a finding that the defendant did so with the intent to kill. *People v. Haynes*, 2023 IL App (1st) 220296, ¶ 25. However, the trial court here was not foreclosed from finding Mr. Jasso intentionally discharged a firearm in Officer Niznik's direction simply because it found Mr. Jasso did not do so with the specific intent to kill Officer Niznik. Indeed, Mr. Jasso testified that he discharged the firearm to "scare" Officer Niznik away.

¶ 33     In sum, the evidence can support the trial court's finding that Mr. Jasso was guilty beyond a reasonable doubt of aggravated discharge of a firearm. Viewing the evidence and reasonable inferences therefrom in the light most favorable to the State, we cannot find that the trial evidence was "so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Bradford*, 2016 IL 118674, ¶ 12. Therefore, we can neither reverse this conviction nor reduce it to the lesser-included offense of reckless discharge of a firearm.

¶ 34     Mr. Jasso also argues that, because the charging instrument did not indicate the State

intended to treat his conduct as four separate acts of aggravated discharge of a firearm, this court should vacate three of his aggravated discharge convictions as barred by the one-act, one-crime rule. Mr. Jasso acknowledges that this claim is forfeited because he failed to raise it below but argues that it is reversible error under the second prong of the plain error doctrine. The State concedes both these issues.

¶ 35    The parties are correct that one-act, one-crime violations fall within the second prong of the plain error doctrine. *People v. Smith*, 2019 IL 123901, ¶ 14. We also agree that, as charged, Mr. Jasso's four convictions for aggravated discharge of a firearm violate the one-act, one-crime rule, as the shots underlying the charges were not charged as separate physical acts.

¶ 36    Under the one-act, one-crime rule, "a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *Coats*, 2018 IL 121926, ¶ 11. We review *de novo* whether a violation of the one-act, one-crime rule occurred. *People v. Coats*, 2018 IL 121926, ¶ 12.

¶ 37    The four counts for aggravated discharge of a firearm charged that Mr. Jasso "discharged a firearm in the direction of" Officer Niznik but did not allege that Mr. Jasso fired more than once at Officer Niznik. Because the indictment did not indicate that the State intended to treat Mr. Jasso's multiple gunshots as separate offenses, he could not be convicted of multiple counts of aggravated discharge of a firearm premised on the same discharge. See *People v. Crespo*, 203 Ill. 2d 335, 345 (2001) (in order for multiple convictions to be sustained, the indictment must indicate that the State intends to treat the defendant's conduct as multiple acts); *People v. Boyd*, 307 Ill. App. 3d 991, 999 (1999) (the defendant could not receive multiple convictions for discharging a firearm at the victim, where the indictment did not allege that the defendant fired more than once). Accordingly, we agree with the parties that Mr. Jasso's four convictions for aggravated discharge

of a firearm violate the one-act, one-crime rule and only one conviction may stand.

¶ 38    Under the one-act, one-crime doctrine, "sentence should be imposed on the more serious offense." *People v. Artis*, 232 Ill. 2d 156, 170 (2009). Thus, the proper remedy for a violation of the one-act, one-crime rule is to vacate the less serious offense. *Id.*; *In re Samantha V.*, 234 Ill. 2d 359, 379 (2009). To determine which offense is the more serious, we compare the relative punishments prescribed by the legislature for each offense. *Artis*, 232 Ill. 2d at 170.

¶ 39    Aggravated discharge of a firearm in the direction of a peace officer (720 ILCS 5/24-1.2(a)(3) (West 2020)), as charged in counts IX, X, and XI, is a Class X felony, while aggravated discharge in the direction of another person (720 ILCS 5/24-1.2(a)(2) (West 2020)), as charged in count XII, is a Class 1 felony (720 ILCS 5/24-1.2(b) (West 2020)). Accordingly, we vacate the sentence on aggravated discharge count XII as that Class 1 felony is clearly a less serious offense than the three Class X felonies charged in counts IX, X, and XI.

¶ 40    As to counts IX, X, and XI, each involves the same mental state and identical punishments. And as the 14-year sentences were ordered to run concurrently, vacating two of the convictions will not affect Mr. Jasso's total sentence. We thus grant Mr. Jasso's request that judgment be imposed only on count IX for aggravated discharge of a firearm and that the convictions on counts X and XI be vacated.

¶ 41                          IV. CONCLUSION

¶ 42    For the foregoing reasons, we vacate the convictions for aggravated discharge of a firearm on counts X, XI, and XII, and order the mittimus be corrected to reflect only one conviction for aggravated discharge of a firearm on count IX. We otherwise affirm the judgment of the trial court.

¶ 43    Affirmed in part and vacated in part; mittimus corrected.