2024 IL App (2d) 230070-U
No. 2-23-0070
Order filed February 21, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-506 |
| ENRIQUE B. JAQUEZ, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:  (1) Defendant's convictions of attempted murder and home invasion do not violate the one-act, one-crime rule even though both offenses involved discharge of a firearm inside a dwelling, because the home invasion involved the separate act of entering the dwelling.  Also, attempted murder is not a lesser included offense of home invasion, as attempted murder contains an element, the specific intent to kill, not contained in home invasion.  (2) Imposition of a firearm enhancement for both attempted murder and home invasion is not an improper double enhancement, as these were separate offenses and the legislature clearly authorized an enhancement for each.

¶ 2   Defendant, Enrique B. Jaquez, appeals his convictions of attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1)) (West 2014)) and home invasion (720 ILCS 5/19-6(a)(5) (West 2014)), contending

that his conviction of attempted murder violates the one-act, one-crime rule and, alternatively, that his sentence for attempted murder must be vacated because the imposition of a 25-year firearm enhancement for both attempted murder and home invasion constitutes an improper double enhancement. Because the attempted murder conviction does not violate the one-act, one-crime rule and the trial court properly imposed a 25-year firearm enhancement for both attempted murder and home invasion, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State indicted defendant on one count of attempted first degree murder based on his discharging a firearm, with the intent to kill, at Juan Gomez and causing him great bodily harm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2014)), one count of home invasion based on his entering a dwelling place and discharging a firearm that proximately caused Gomez great bodily harm (720 ILCS 5/19-6(a)(5) (West 2014)), one count of aggravated battery based on his discharging a firearm that injured Gomez (720 ILCS 5/12-3.05(c)(1) (West 2014)), one count of aggravated discharge of a firearm based on his discharging a firearm in the direction of Gomez (720 ILCS 5/24-1.2(a)(2) (West 2014)), and one count of aggravated unlawful use of a weapon based on his possession of a firearm while being a convicted felon (720 ILCS 5/24-1.6(a)(1)(3)(A-5) (West 2014)).

¶ 5     The following facts were developed at defendant's jury trial. Maria Martinez was defendant's ex-girlfriend. They had dated for several years and had a daughter together. A few months after she broke up with defendant, Martinez began dating Gomez, and he eventually moved into her house in Aurora. On Easter Day 2014, defendant had a physical altercation with Gomez at Martinez's home. In the fall of 2014, defendant confronted Martinez at defendant's parents' house about whom she was dating and struck her in the face with his fist. On Christmas Day 2014,

while Martinez and Gomez were at Gomez's mother's house, defendant arrived uninvited and was very angry.

¶ 6     At around 10 a.m. on March 27, 2015, Martinez and Gomez were working in separate upstairs bedrooms of her house when someone repeatedly rang the front doorbell and knocked on the door.  Gomez looked out the bedroom window and saw defendant in front of the house. Martinez went downstairs to the front door.

¶ 7     Martinez described the front entry as having both an interior door and a combination screen and glass storm door.  Martinez opened the interior door but not the storm door.  According to Martinez, defendant appeared very angry and demanded to see her "bitch," who she interpreted to mean Gomez.

¶ 8     While defendant was still outside, Gomez joined Martinez at the storm door, which was still closed and locked.  Defendant then pulled out a silver handgun and pointed it at Martinez and Gomez.  Gomez ran into the living room while Martinez stayed at the storm door.

¶ 9     Defendant then charged the storm door.  According to Martinez, the storm door had two windows, one at the top and one at the bottom.  Defendant kicked in the bottom window and crawled through that opening.  Although Martinez tried to close the interior door, defendant forced his way into the house.

¶ 10     After entering, defendant went into the living room.  (Martinez and Gomez described the lower level as having an open floor plan with a living room, dining room, and kitchen.)  Martinez then jumped on defendant and tried to restrain him.  Meanwhile, Gomez went into the kitchen area and then toward the storm door, intending to flee the house.

¶ 11     As Gomez approached the storm door, he paused when he saw Martinez and defendant struggling.  Gomez asked defendant what his "problem" was.  Defendant then fired the gun twice

at Gomez, striking him. After being shot, Gomez managed to exit through the storm door. Defendant also left the house and drove away.

¶ 12    Martinez located Gomez in front of the house and called 911 to report the shooting. Gomez was transported to the hospital and underwent surgery for a single gunshot wound. The bullet had passed through Gomez's torso, injuring his lung, liver, and digestive tract. He continued to have occasional shortness of breath and stomach issues at the time of trial.

¶ 13    During their investigation, police found two shell casings inside the house. One was found near the front door and the other behind a living room couch cushion. The police also found two fired bullets. One was found in the laundry room below the garage, and the other on the sidewalk near the front of the house. No gun was found at the house. A forensics expert concluded that the casings were ejected from the same gun and that the bullets were fired from the same gun. However, because no gun was recovered, the expert could not opine whether the casings and the bullets came from the same gun.

¶ 14    Aurora police sergeant Don Flowers conducted a photo lineup with Gomez at the hospital. Gomez identified defendant as the shooter.

¶ 15    Although the police searched for defendant after the incident, they did not find him. On December 25, 2016, Martinez received several text messages from a phone number with a Mexican area code. From the content of the messages, which referred to Martinez's breast surgery, the size of her nose, and the shooting of Gomez, Martinez believed that defendant had sent the messages. Martinez reported the messages to Aurora police sergeant Jeffrey Hahn. After learning that defendant had fled to Mexico, Hahn turned the investigation over to federal authorities in El Paso, Texas. On September 22, 2018, defendant was taken into custody as he tried to enter the United States at El Paso.

¶ 16    Aurora police detective Alexandra Martyn testified for defendant that Gomez's medical records indicated that he told paramedics that he had been shot in a drive-by shooting. On cross-examination, Martyn acknowledged that all evidence collected at the scene indicated that the shooting occurred inside the house.

¶ 17    The jury found defendant guilty of all charges. The jury also specifically found that defendant discharged a firearm that proximately caused great bodily harm to Gomez.

¶ 18    At the sentencing hearing, defendant argued, among other things, that the one-act, one-crime rule required the trial court to merge his attempted murder conviction into his home invasion conviction because both convictions were based on defendant's discharging a firearm at Gomez and causing him great bodily harm. The court rejected that argument, ruling that separate convictions and sentences were proper because the two offenses had different elements. The court merged the aggravated battery and aggravated discharge convictions into the attempted murder conviction. The court then sentenced defendant to six years in prison for attempted murder, six years in prison for home invasion, and five years in prison for aggravated unlawful use of a weapon. The court imposed a 25-year firearm enhancement on both the attempted murder and home invasion convictions and made all sentences consecutive, for an aggregate sentence of 67 years.

¶ 19    Defendant filed a timely notice of appeal. At the time, defendant had a pending motion to reconsider his sentence. Defendant later withdrew the motion, and the appellate defender filed an unopposed motion in this court, seeking a ruling that we have jurisdiction over the appeal. We ruled that we have jurisdiction. Thus, we proceed to the merits of the appeal.

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, defendant first contends that his attempted murder conviction must be vacated because it is predicated on the same act as his home invasion conviction and, thus, violates the one-act, one-crime rule.  Alternatively, he contends that his sentence for attempted murder must be vacated and the cause remanded for resentencing because the 25-year firearm enhancement imposed for that offense is an improper double enhancement given that the firearm enhancement for home invasion is based on the same conduct of discharging a firearm.

¶ 22    We first address whether defendant's attempted murder conviction violates the one-act, one-crime rule.  It does not.  "[A] criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act."  *People v. Coats*, 2018 IL 121926, ¶ 11.  Deciding whether the one-act, one-crime rule bars multiple convictions requires a two-step analysis.  *Coats*, 2018 IL 121926, ¶ 12.  First, the court ascertains whether the defendant's conduct consisted of a single act or separate acts.  *Coats*, 2018 IL 121926, ¶ 12.  If it is determined that the defendant committed multiple acts, the court then moves to the second step of the analysis and determines whether any of the offenses are lesser included offenses.  *Coats*, 2018 IL 121926, ¶ 12.  If none of the offenses is a lesser included offense, then multiple convictions are proper.  *Coats*, 2018 IL 121926, ¶ 12.  Whether the one-act, one-crime rule was violated is a question of law, which we review *de novo*.  *Coats*, 2018 IL 121926, ¶ 12.

¶ 23    For purposes of the rule, an "act" is " 'any overt or outward manifestation which will support a different offense.' "  *Coats*, 2018 IL 121926, ¶ 15 (quoting *People v. King*, 66 Ill. 2d 551, 566 (1977)).  Under *King*, "[a] person can be guilty of two offenses when a common act is part of both offenses [citation] or part of one offense and the only act of the other offense [citation]."  (Internal quotation marks omitted.)  *Coats*, 2018 IL 121926, ¶ 15.  "As long as there

are multiple acts as defined in *King*, their interrelationship does not preclude multiple convictions *** ." (Internal quotation marks omitted.) *People v. Siguenza-Brito*, 235 Ill. 2d 213, 233 (2009).

¶ 24 Here, although there was an act common to both attempted murder and home invasion, *i.e.*, the discharge of the firearm, the home invasion involved the separate act of entering the victim's dwelling. See *People v. McLaurin*, 184 Ill. 2d 58, 105 (1998) (convictions of intentional murder and home invasion were proper because, although both involved the common act of setting a fire, the physical act of entering the dwelling of the victim was a separate act that supported the home invasion conviction); *People v. Marston*, 353 Ill. App. 3d 513, 519 (2004) (convictions of home invasion and aggravated battery were proper, despite the common act of striking the victim with a pole, because the defendant's entry into the home was a separate act that supported the home invasion conviction). Under well-established law, the separate act of entry into the home supported the home invasion conviction. Thus, the convictions of attempted murder and home invasion were predicated upon multiple acts.

¶ 25 Because separate acts supported the two convictions, we must next determine if attempted murder is a lesser included offense of home invasion. It is not.

¶ 26 When the issue of lesser included offenses arises in a one-act, one-crime challenge, we apply the abstract elements approach. *People v. Smith*, 2019 IL 123901, ¶ 37. That approach ensures that the defendant will be held accountable for the full measure of his conduct and the harm caused. *Smith*, 2019 IL 123901, ¶ 37. Under the abstract elements approach, we compare the statutory elements of the two offenses. *Smith*, 2019 IL 123901, ¶ 37. Where a statute sets forth alternative ways of committing an offense, we consider only the subsection under which the defendant was actually charged and convicted. *People v. Reveles-Cordova*, 2020 IL 124797, ¶¶ 16, 20. According to the abstract elements approach, "[i]f all the elements of one offense are

included within the second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser[ ]included offense of the second." *Smith*, 2019 IL 123901, ¶ 37. For one offense to be a lesser included offense of another, "it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Reveles-Cordova*, 2020 IL 124797, ¶ 13. If that is the case, the less serious offense must be vacated. *Smith*, 2019 IL 123901, ¶ 37.

¶ 27    Here, defendant was charged with attempted murder based on his discharging a firearm with the intent to kill the victim. The statutory elements of attempted murder as charged were that defendant (1) with an intent to commit a specific offense (intentional murder), (2) took a substantial step toward the commission of that offense (720 ILCS 5/8-4(a) (West 2014)), and (3) intended to kill the victim by discharging a firearm (720 ILCS 5/9-1(a)(1) (West 2014)). The statutory elements of home invasion as charged were that defendant (1) who was not a peace officer acting in the line of duty, (2) knowingly and without authority entered the dwelling place of another, and (3) personally discharged a firearm that proximately caused great bodily harm to another person in the dwelling. 720 ILCS 5/19-6(a)(5) (West 2014).

¶ 28    Attempted murder contains an element (specific intent to kill) not included in the offense of home invasion based on the discharge of a firearm. Clearly, a defendant could discharge a firearm that caused great bodily harm during a home invasion without necessarily intending to kill someone. On the other hand, a defendant could not commit attempted intentional murder by discharging a firearm if he lacked the specific intent to kill. Therefore, the jury here was not required to find that defendant intended to kill Gomez before finding him guilty of home invasion. However, the jury *was* required to find that defendant had the specific intent to kill Gomez before it could find him guilty of attempted murder. Thus, because attempted murder contains an element

(intent to kill) not included in home invasion, attempted murder is not a lesser included offense of home invasion. See *Smith*, 2019 IL 123901, ¶ 37. Thus, both convictions were properly entered.

¶ 29 Defendant's reliance on *Reveles-Cordova* is misplaced. In that case, the supreme court held that criminal sexual assault was a lesser included offense of home invasion based on criminal sexual assault. *Reveles-Cordova*, 2020 IL 124797, ¶ 21. It did so because all the elements of criminal sexual assault were included in the offense of home invasion predicated upon criminal sexual assault. *Reveles-Cordova*, 2020 IL 124797, ¶ 21. Here, however, not all the elements of attempted murder are included in home invasion based on discharge of a firearm. As discussed, intent to kill is not an element of home invasion based on discharge of a firearm. Thus, *Reveles-Cordova* does not support defendant's position.

¶ 30 We next address whether the imposition of a 25-year firearm enhancement on defendant's sentence for attempted murder constitutes an improper double enhancement where the trial court also imposed a firearm enhancement for home invasion. It does not.

¶ 31 We begin by noting that defendant concedes that he did not properly raise this issue in the trial court but argues that it should be recognized as plain error. To preserve a sentencing error for appellate review, a defendant must both make a contemporaneous objection and raise the issue in a written postsentencing motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). However, plain errors or defects that affect substantial rights may be addressed even though they were not brought to the trial court's attention. *People v. Herron*, 215 Ill. 2d 167, 176 (2005). Because sentencing issues can affect a defendant's substantial rights, they can be reviewed for plain error. *People v. Donald*, 2023 IL App (1st) 211557, ¶ 32.

¶ 32 A reviewing court may address a forfeited claim of sentencing error under the plain-error doctrine if a clear or obvious error occurred and either (1) the evidence was closely balanced or

(2) the error was so serious that it deprived the defendant of a fair sentencing hearing. *People v. Thomas*, 178 Ill. 2d 215, 251 (1997). Because we hold that no clear or obvious error occurred, we uphold defendant's forfeiture. See *People v. Keene*, 169 Ill. 2d 1, 17 (1995).

¶ 33 Generally, a trial court may not use a factor both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed. *People v. Guevara*, 216 Ill. 2d 533, 545 (2005). This dual use of a single factor is often referred to as a "double enhancement." *People v. Gonzalez*, 151 Ill. 2d 79, 84 (1992). The rule against double enhancements is premised on the assumption that the legislature considered the factors inherent in the offense in determining the appropriate range of penalties for that offense. *People v. Rissley*, 165 Ill. 2d 364, 390 (1995). However, where the legislature clearly intended to enhance the penalty for a crime, even in a way that might constitute a double enhancement, a court will not overrule the legislature. *People v. Sharpe*, 216 Ill. 2d 481, 530 (2005). Whether a sentence constitutes an improper double enhancement is reviewed *de novo*. *People v. Phelps*, 211 Ill. 2d 1, 12 (2004).

¶ 34 Here, we note that defendant does not assert that imposition of the 25-year firearm enhancement for attempted murder was itself a double enhancement. Rather, he maintains that, because he received a 25-year firearm enhancement for his discharge of a firearm as an element of home invasion, it was improper to also impose a 25-year firearm enhancement for attempted murder. We disagree.

¶ 35 Defendant's argument overlooks the fact that the double enhancement rule assumes that the subject of the enhancements is a single offense. As discussed, although attempted murder and home invasion overlapped to a degree, they were distinct offenses for purposes of the one-act, one-crime rule because home invasion involved the separate act of entering the home. And as also discussed, attempted murder is not a lesser included offense of home invasion. Imposing firearm

enhancements for separate offenses is not the same as elevating a single sentence. "[E]ven when subject to consecutive sentencing, '[e]ach conviction results in a *discrete sentence* that must be treated *individually*.' " (Emphasis in original.) *Phelps*, 211 Ill. 2d at 14 (quoting *People v. Carney*, 196 Ill. 2d 518, 530 (2001)). See *People v. Trujillo*, 2023 IL App (4th) 210489-U, ¶¶ 88-91 (firearm enhancements for both first degree murder and armed robbery did not constitute a double enhancement, as "[n]o enhancement was used twice to improperly elevate a single sentence" but, rather, "[the] defendant's discrete sentences were statutorily enhanced as the legislature intended"). We reject defendant's attempt to conjoin two distinct convictions, each of which permits the imposition of a firearm enhancement, to argue that the trial court imposed an improper double enhancement. We are aware of no authority that expands the rule against double enhancement—which prohibits using a factor that is an element of a single offense to increase the sentence for that particular offense—to a combination of offenses where each offense is otherwise properly subject to a sentencing enhancement based on the same conduct. Because the trial court did not err in imposing a 25-year firearm enhancement for both attempted murder and home invasion, defendant is not entitled to plain error relief.

¶ 36                                    III. CONCLUSION

¶ 37    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 38    Affirmed.